**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CLINTON STRANGE | CIVIL ACTION NO. 19-1361 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| ABC CO., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion for default judgment filed by pro se Plaintiff Clinton Strange ("Strange"). See Record Document 27. Strange seeks judgment against Defendants Ethos Data Management, Inc. ("Ethos") and James McManus ("McManus") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Based on the following analysis, Strange's motion for default judgment [Record Document 27] is **DENIED**.

### Background

The Supreme Court has aptly described the history and purpose of the TCPA: "In 1991, Congress passed and President George H. W. Bush signed the Telephone Consumer Protection Act. The Act responded to a torrent of vociferous consumer complaints about intrusive robocalls. A growing number of telemarketers were using equipment that could automatically dial a telephone number and deliver an artificial or prerecorded voice message." Barr v. Am. Ass'n of Political Consultants, Inc, 140 S. Ct. 2335, 2344 (2020). "Many consumers [were] outraged over the proliferation of intrusive, nuisance telemarking calls to their homes." Mims v. Arrow Fin. Servs., 565 U.S. 368, 372 (2012) (original

alterations omitted). As the Supreme Court has explained, "[i]n plain English, the TCPA prohibited almost all robocalls to cell phones." Barr, 140 S. Ct. at 2344.

In the instant case, Strange brought a TCPA private enforcement action against an unknown defendant, whom he dubbed ABC Company. Record Document 1. He claimed the unknown defendant(s) had placed auto-dialed calls to his cell phone without his permission. Strange was later able to determine that the alleged violators were Defendants Ethos and McManus. He claims McManus is the head of the Ethos business entity.

Strange's pleadings allege that on January 3, 2018, he registered his cell phone number with the National Do-Not-Call Registry, and on August 2, 2018, he registered the number with Louisiana's Do-Not-Call Registry. Record Document 11-1, pp. 2-3. Despite those registrations, Strange submits that between September 26, 2019 and October 2, 2019, he received on his cell phone six automated calls from number 318-202-2497. Record Document 1, pp. 3-4. As the six calls at issue were made to Strange's cell phone without his consent, he instituted the instant action under the TCPA, 47 U.S.C. §§ 227(b) and (c).

Strange apparently learned that during the relevant time period, the number 318-202-2497 was registered or licensed to Ethos. Record Document 11, p. 5. Thus, according to Strange, Ethos is the company responsible for placing the calls. However, Strange asserts that because "Ethos is such a closely held corporate entity . . . McManus is personally liable for the actions of Ethos." Id. at p. 3. Indeed, Strange contends that McManus is the alter ego of Ethos and that McManus has employed Ethos's funds for his

2

own personal use. Id. at p. 4. He also alleges that McManus is personally liable for Ethos's TCPA violations because McManus was "so involved with the 'dialing aspects' of the calling aspects of the recent telemarketing campaign." Id.

After Strange filed his amended complaint naming Ethos and McManus as Defendants, the Court issued a summons to these two Defendants, and Ethos and McManus were served. Record Document 14.[1] Neither Ethos nor McManus have ever answered the complaint or appeared in court to defend against this action. Strange obtained the Clerk's Entry of Default on March 25, 2020. Record Document 16. He now moves for default judgment. In so doing, Strange asserts that the Defendants are liable for six violations of Section 227(b)(1)(A)(iii) and six violations of Section 227(c)(5). Both of these provisions permit a private right of action by the caller, and both would subject the instant Defendants to $500 in damages for each TCPA violation. Strange further argues that the Defendants knowingly and willfully violated Section 227, which subjects them to the imposition of treble damages, which would amount to an award of $1,500 for each violation.

**Law and Analysis**

**I.    Default Judgment.**

Federal Rule of Civil Procedure 55 allows the Court to enter a default judgment when a party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55. The Court must establish that a default judgment

---

[1] Ethos's summons was served on McManus, in his capacity as President of the company. Record Document 14, p. 3.

is appropriate in both procedure and substance. Procedurally, the plaintiff must show both default and an entry of default. "A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An entry of default is what the clerk enters when the default is established by affidavit or otherwise. After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a default judgment." N.Y. Life Ins. Co. v. Brown, 84 F.3d 137, 141 (5th Cir. 1996).

However, default does not by itself warrant entry of a default judgment. Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Substantively, a plaintiff must "set[] forth facts establishing that it is entitled to relief." United States v. Giles, 538 F. Supp. 2d 990, 993 (W.D. Tex. 2008). When a defendant defaults, it is deemed to have admitted the plaintiff's well-pleaded allegations of fact, but not any conclusions of law, nor any allegations of fact that are not well-pleaded. Nishimatsu Constr., 515 F.2d at 1206. Finally, the relief ordered in default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Here, Defendants defaulted when they did not file any answer or defense to the complaint. Upon Strange's motion, the Clerk of Court entered a notice of entry of default. Record Document 16. Hence, the procedural requirements for default judgment are met. The only issue for the Court to determine is whether a default judgment is warranted. That requires the Court to decide whether the Defendants are liable to Strange, and if so, determine the appropriate amount of damages he is owed, if any.

## II. The TCPA.

a. Section 227(b)

Strange first alleges a claim under Section 227(b)(1)(A)(iii) of the TCPA. This section makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines "automatic telephone dialing system" as equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers."[2] 47 U.S.C. § 227(a)(1). "To state a claim under the TCPA for calls made to a cellular phone, a plaintiff is required to allege that a call was made to a cell or wireless phone by the use of any automatic dialing system or an artificial or prerecorded voice and without prior express consent of the called party." Cunningham v. TechStorm, LLC, No. 3:16-CV-2879, 2018 WL 3118400, at *3 (N.D. Tex. May 29, 2018) (citations omitted).

Strange alleges that six calls were made to his cell phone. He has attached pictures of his call log which demonstrate six incoming calls to his number from 318-202-2497.

---

[2] The Court notes that the Supreme Court granted certiorari in Facebook, Inc. v. Duguid, 141 S. Ct. 193 (2020) and heard oral arguments in December of 2020 regarding whether the TCPA's definition of an "automatic telephone dialing system" includes a device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator." Here, as discussed below, Strange has sufficiently alleged that the Defendants used an automatic telephone dialing system and he has submitted evidentiary support for that contention. Because the Defendants have chosen not to respond to this suit, the Court accepts that factual allegation as true.

5

Record Document 11, p. 5. Those calls took place on September 26, September 27, October 1, and October 2, 2019. Id. He has additionally shown that at least four of the six calls lasted exactly eleven seconds.[3] In support of his allegation that an automatic dialing system was used, Strange asserts that although he was called by the calling party, he was never connected to a live agent on any one of these six calls. Further, he submits that each of the six calls was "abandoned," meaning that the calling party ultimately disconnected. Strange asserts that he tried calling the number back on October 2, 2019, to warn the caller to stop calling him, but that "after six (6) minutes the Defendant's automated system (which never identified Defendant in any way) disconnected the Plaintiff's call. . . . Some days later when the Plaintiff tried again to call the Defendant's phone number he found that it was out of service." Record Document 1, pp. 4-5 (internal marks omitted).

Strange has provided the Court with documents purportedly from a company named Telesero, which evidently provides the technology that calling centers utilize to make a respective company's calls to its customers or to the public. The Telesero documentation evidences that its platform was used to place six calls to Strange's number. Record Document 27-1, pp. 12-13. Separate Telesero documents purportedly show that McManus, on behalf of Ethos, entered into an agreement with Telesero, and these materials establish that Ethos was, in fact, a Telesero client. Id. at pp. 11-15. What is missing, however, is the link between the 318-202-2497 number that called Strange using the Telesero platform and Ethos and/or McManus. Strange states that he has "verified

---

[3] There is no duration noted for the other two calls.

6

through three successive subpoenas that the enduser subscriber" of that phone number "is Ethos." Record Document 11, p. 5. However, that evidence has not been presented to the Court. Without that proof, the Court cannot find Ethos or McManus liable to Strange for these six calls. Accordingly, default judgment as to Section 227(b) violations is denied with the right to reurge.

    b.    Section 227(c)(5)

Strange's second allegation against Ethos and McManus is a violation of Section 227(c)(5). Section 227(c)(5) of the TCPA allows a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations. 47 U.S.C. § 227(c)(5). Essentially, this pertains to calls to persons on the National Do-Not-Call Registry. The specific language of the TCPA provides that the regulations implemented pursuant to Subsection 227(c) apply to telephone solicitations made to "residential telephone subscribers." 47 U.S.C. § 227(c)(1) ("[T]he Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."). Subsection (c) and its accompanying regulations in 47 C.F.R. § 64.1200(d)(3) impose minimum procedures for maintaining a do-not-call list that apply to all calls—live or automated—initiated for telemarketing purposes to residential telephone subscribers. See Charvat v. NMP, LLC, 656 F.3d 440, 449 (6th Cir. 2011).

Some courts who have evaluated similar TCPA claims have dismissed them after concluding that Section 227(c)(5) does not encompass calls to cell phones, while other

courts have required a plaintiff to present evidence establishing that he used his cell phone for residential purposes. See Strange v. Doe #1, No. 19-1096, 2020 WL 2476545, *3 (W.D. La. May 12, 2020) (collecting cases). The Federal Communications Commission, which is the agency responsible for the TCPA's implementation, has observed this disconnect between the treatment of residential phones and cell phones and has stated:

> [W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. As indicated above, Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls. In addition, although Congress expressed concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers. Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003) (footnotes omitted).

From this, the Court finds persuasive authority that plaintiffs, like Strange, who register their cell phones with do-not-call registries are *presumed* to be residential subscribers. However, the Court finds that Strange is still required to put forth evidence supporting this presumption, as he is seeking enforcement of Section 227(c)(5) against the Defendants. See Cunningham v. McDonald, No. 3:15-CV-215, 2018 WL 6737418, *2 (M.D. Tenn. Nov. 5, 2018) ("While a person utilizing a cellular phone may fall within the definition of a 'residential telephone subscriber' under the act, Plaintiff's pleadings allege

8

only that calls were made to his cellular phone and he has pled no facts or offered evidence sufficient for the court to draw the conclusion that he has stated a cause of action under subsection (c)(5)"); Stevens-Bratton v. TruGreen, Inc., 437 F. Supp. 3d 648, 655 (W.D. Tenn. Feb. 4, 2020) ("Courts have interpreted the 'residential telephone subscriber' element to require proof that the number called was used for 'residential purposes.' "); Cunningham v. Rapid Capital Funding, LLC/RCF, No. 3:16-CV-2629, 2017 WL 3574451, *3 (M.D. Tenn. July 27, 2017) ("While this Court has suggested that calls to a cell phone may be construed as calls to a *residential telephone*, the plaintiff must plead facts showing the cell phone is used for residential purposes." (emphasis in original)).  Thus, Strange cannot prevail under Section 227(c)(5) without sufficient proof that he used his cell phone for residential purposes.

The Court notes two additional defects in Strange's quest for relief under Section 227(c)(5).  First, as mentioned above with respect to the Section 227(b) violations, Strange cannot succeed in this case without proof connecting the Defendants to the calling number.  Second, Section 227(c)(5) refers to unwanted "telephone solicitations," defined in relevant part as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ." See 47 U.S.C. § 227(a)(4), (c)(1).  Strange has not put forth any evidence to satisfy the Court that the calls he received fit the definition of "telephone solicitations" as set forth in the governing statute. For these reasons, default judgment is denied as to the Section 227(c)(5) claim with the right to reurge.

    c.    McManus's Liability

The Court will additionally caution Strange that it does not find sufficient evidence to connect McManus to any liability that may be established as to Ethos. Strange is reminded that the Defendants are only deemed to have admitted the well-pleaded allegations in the complaint and amended complaint. Allegations that fall short of this standard do not constitute legal admissions, nor do admissions result from legal conclusions masquerading as facts.

Here, Strange refers to McManus as the CEO and President of Ethos. As mentioned previously, Strange asserts that because "Ethos is such a closely held corporate entity . . . McManus is personally liable for the actions of Ethos." Record Document 11, p. 3. Strange avers that McManus is the alter ego of Ethos and that McManus has employed Ethos's funds for his own personal use. Id. at p. 4. He also alleges that McManus is personally liable for Ethos's TCPA violations because McManus was "so involved with the 'dialing aspects' of the calling aspects of the recent telemarketing campaign." Id. In addition, he asserts that McManus digitally signed the Telesero licensing agreement "via a mobile device bearing an IP address that corresponded to Palm Beach County, Florida where Defendant McManus resides." Record Document 27, p. 4. And, Strange contends that "Defendant Ethos' bank account was closed by Defendant McManus at the time, and Ethos was dissolved by the Florida Secretary of State during the relevant time period." Id. Lastly, he urges that "Defendant McManus is personally liable for the calls that were placed to Plaintiff's cell phone because the telephone numbers were licensed by him personally, paid for by funds drawn on his personal account, and personally authorized by him- Not Defendant Ethos." Id. The Court does not find these to be well-pleaded allegations such

10

that McManus can be held legally responsible for the TCPA violations alleged by Strange. There is no factual support or evidentiary context to substantiate any of these allegations. If Strange intends to secure a default judgment against McManus, he will be expected to provide the Court with more than unsupported allegations or conclusions of law, neither of which will be accepted by the Court.

## Conclusion

For the foregoing reasons, the Plaintiff's motion for default judgment [Record Document 27] be and is hereby **DENIED**.

**THUS DONE AND SIGNED** this 1st day of March, 2021.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE